IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00853-FL

| | |
|---|---|
| KATHY ANN WHITE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-28, DE-30] pursuant to Fed. R. Civ. P. 12(c). Claimant Kathy Ann White ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on May 16, 2006, alleging disability beginning April 1, 2001. (R. 144-47; 148-53). Both claims were denied initially and upon reconsideration. (R. 56-59, 78-83, 90-111). A hearing before Administrative Law

Judge Angela Miranda ("ALJ") was held on April 21, 2009, at which Claimant was represented by counsel and a witness and a vocational expert ("VE") appeared and testified, and Claimant amended her alleged onset date to August 25, 2007. (R. 6-55, 192, 1117). On July 31, 2009, ALJ Miranda issued a decision denying Claimant's request for benefits. (R. 60-77, 1117). On August 20, 2010, the Appeals Council denied Claimant's request for review. (R. 1-5, 1117). Claimant then filed a complaint in this court seeking review of ALJ Miranda's decision, and filed a subsequent claim seeking SSI with an alleged onset date of August 1, 2009. (R. 1117). On March 23, 2011 ALJ Jon Hunt issued a fully favorable decision with regard to Claimant's subsequent application, finding that Claimant was disabled. *Id.* On November 18, 2011, U.S. District Judge Terrence Boyle issued an order remanding ALJ Miranda's earlier decision in light of ALJ Hunt's fully favorable decision, noting that Claimant's first claim for benefits was based on similar impairments. (R. 1117, 1168-72).

On March 20, 2012, the Appeals Council affirmed ALJ Hunt's decision finding that Claimant was disabled as of August 1, 2009, and remanded ALJ Miranda's decision to consider whether Claimant was disabled before August 1, 2009. (R. 1117, 1173-77). A second hearing was held before ALJ Catherine Harper on January 11, 2013, at which Claimant was represented by counsel and a VE appeared and testified. (R. 1118, 1135-61). On March 6, 2013, ALJ Harper issued a decision denying Claimant's request for benefits, finding that Claimant was not disabled between August 25, 2007 and July 31, 2009. (R. 1114-34). Claimant filed a request for review of ALJ Harper's decision and exceptions to that decision on May 10, 2013 (R. 1108-13), and on September 9, 2013, the Appeals Council responded by stating that Claimant's exceptions appeared to be untimely (R. 1106-07). Claimant filed a statement in response on September 23, 2013 (R. 1101-05),

2

and on October 15, 2013, the Appeals Council issued a notice finding Claimant's exceptions untimely (R. 1097-1100). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred in evaluating the medical evidence and the opinion of Claimant's treating psychiatrist. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-28] at 7-11.

4

Case 5:13-cv-00853-FL   Document 37   Filed 01/23/15   Page 4 of 17

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 1120). Next, the ALJ determined Claimant had the following severe impairments: lumbar degenerative disc disease and a mental impairment variously assessed as bipolar disorder, post-traumatic stress disorder ("PTSD"), antisocial personality disorder, or borderline personality disorder. *Id.* The ALJ also found Claimant had nonsevere impairments of a history of dislocated left great toe, medically managed asthma and hypertension, and a history of polysubstance abuse. (R. 1120-22). Additionally, while Claimant alleges knee pain, the ALJ determined that this was a symptom and not a medically determinable impairment. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1122). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no more than mild restriction in her activities of daily living and moderate difficulties social functioning and concentration, persistence or pace with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: Claimant can frequently climb, balance,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there
(continued...)

5

stoop, crouch, kneel, and crawl, and should avoid concentrated exposure to poorly ventilated areas and pulmonary irritants. *Id.* The ALJ also identified the following non-exertional limitations: Claimant is only able to perform simple, routine, repetitive tasks in a low-stress job, with occasional changes in the work setting and occasional interaction with the public and coworkers. (R. 1122-23). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 1123-26).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a child monitor, cashier/checker, night auditor, sales associate/telemarketer, and cashier. (R. 1126). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 1127).

## B. Claimant's Testimony at the Administrative Hearing[2]

At the time of Claimant's administrative hearing, Claimant was 50 years old and unemployed. (R. 1140). Claimant is a high school graduate and completed two years of college studying criminal justice. (R. 1142). Claimant receives food stamps, and began getting disability benefits of 710 dollars per month in March of 2011. (R. 1142-43). Claimant receives her checks directly as opposed to through a representative payee. (R. 1142). Claimant has not worked since 2005, when she worked for about a month for Home Buyers Network helping clients qualify for

---

[1](...continued)
are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] As Claimant's allegations of error only go to her mental impairments and the treatment of her treating psychiatrist's opinion, the summary of Claimant's testimony does not include her testimony as to her physical impairments.

6

mortgages by purchasing credit repair packages and for Jiffy Lube as a customer service representative also for about a month. (R. 1143-44). Claimant's past work experience also includes positions as a babysitter, a night auditor at a hotel where Claimant performed the nightly audits and paperwork, a cashier at Eckerd's and Food Lion, an operator at Mohegan Sun Casino, a cage cashier at Foxwoods Casino, and a stock associate at Wal-Mart. (R. 1144-45).

Claimant testified that she has suffered from emotional problems since she was 17. (R. 1149). Claimant testified to being very depressed in 2007 to 2009, especially after she ended a nine-year relationship in July of 2008. (R. 1148-49). Even before the breakup, Claimant had experienced PTSD for years. (R. 1157). During this time, Claimant received mental health treatment every week and saw her psychiatrist once a month for medication. (R. 1148). Claimant did not remember telling her psychiatrist in November of 2008 that her medication was addressing her depression, and testified that the medication helped but she was still experiencing depression, isolation, and problems controlling her anger at that time. (R. 1149). When asked whether her back pain or her mental issues gave her more problems during the time in question, Claimant responded that her mental state was a big problem. *Id.*

Claimant believed that she has had seven to ten inpatient psychiatric hospitalizations, including one at Dorothea Dix hospital in September of 2007. (R. 1150). Before that hospitalization, Claimant had been receiving psychiatric treatment from a team from Easter Seals, including a therapist named Claudine Parker. *Id.* Parker testified at Claimant's hearing before Judge Miranda, and Claimant stated that Parker's testimony accurately reflected Claimant's mental state during the relevant time period. (R. 1151). During that time, Claimant treated Parker one or twice per week, always at Claimant's home. (R. 1151, 1156). Parker attempted a normal course of

7

treatment where Claimant saw Parker less frequently, but because of Claimant's mood swings, Parker resumed treating Claimant at least weekly. *Id.* Parker continued treating Claimant after the period in question. (R. 1156).

Claimant was also treated by her caseworker's supervisor twice a month, who would see Claimant at her house. (R. 1151-52). During that time, Claimant was very isolated and would stay in the darkness in her house with the blinds closed. (R. 1152). Helen, another member of the Easter Seals team, would take Claimant on trips to get her out of the house. *Id.* On one occasion, Helen took Claimant to a convention center to attend a culture festival, where Claimant tasted different foods. *Id.* Claimant testified that she enjoyed that trip, but that it was not the type of activity she was frequently participating in during that time period. *Id.* After that trip, Claimant went back to being locked in the house and depressed. (R. 1152-53). Between 2007 and the time Claimant was found to be disabled, Claimant received home visits on a regular basis from the Easter Seal team, due to her lack of transportation. (R. 1156-57).

Claimant lives in an informal boarding house, with four bedrooms, two bathrooms, and shared living facilities. (R. 1153). This is the same house where Claimant lived during 2007 and 2008. *Id.* Claimant testified that three to four days a week, she would have dark spells where she would lock herself in her room. *Id.* Claimant would have very little "up periods" where she would have a good day and go to the library, for example. (R. 1154). Claimant also had difficulties interacting with the other tenants in her house, because she was unable to control her temper and would get into fights with them. (R. 1153-54). Claimant did not have a car, had no income or any way of paying for medical care, and received food stamps during that time period. (R. 1154). Claimant testified that she would miss medical appointments and fail to refill her medications due

8

to her lack of income and transportation and her depression. *Id.* Claimant testified that during the time in question, she did not believe that she could have performed any job on a regular and continuous basis. (R. 1157).

Claimant testified to having approximately 20 odd jobs between 1997 and 2005, and being terminated from many of those positions due to her depression and inability to get along with coworkers or customers. (R. 1154). Claimant believed that three to five of those jobs were of short duration, in that she worked there for less than a week. (R. 1154-55). During the time period in question, Claimant was not using drugs. (R. 1155). Claimant had a relapse and used illegal drugs in December of 2010, but before then it had been years since she had used drugs. *Id.*

Claimant was represented by a different attorney at her first two hearings, but he withdrew in July of 2012 due to Claimant's inability to pay costs, including copying fees and medical records fees. (R. 1156).

### C.    Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 1157-59). After the VE's testimony regarding Claimant's past work experience (R. 1158), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with the following limitations: able to frequently climb ladders, ropes, scaffolds, ramps, and stairs; frequently balance, stoop, crouch, kneel, and crawl; and should avoid concentrated exposure to poorly ventilated areas and pulmonary irritants. *Id.* Further, the individual is able to perform simple, routine, and repetitive tasks in a low-stress job (occasional changes in the work setting) and

9

is able to have occasional interaction with the public and coworkers. *Id.* The VE responded that the past relevant work is excluded, but opined that such an individual could work as an office helper (DOT # 239.56-010, light, SVP-2), marker (DOT # 209.587-034, light, SVP-2), or mail sorter (DOT # 209.687-026, light, SVP-2). (R. 1158-59).

Second, the ALJ posed the same limitations for an individual who can perform sedentary work, and the VE stated that such an individual could work as a call-out operator (DOT # 237.367-014, sedentary, SVP-2), sorter (DOT # 209.687-022, sedentary, SVP-3, unskilled as performed), or voucher clerk (DOT # 214.482-018, sedentary, SVP-3, unskilled as performed). (R. 1159). And finally, the ALJ asked whether an individual who is unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week for a 40-hour work week or an equivalent work schedule would be excluded from competitive work at all exertional levels, and the VE responded in the affirmative. *Id.* The VE stated that her testimony had been consistent with both the Dictionary of Occupational Titles and with her training and experience. *Id.*

## V. DISCUSSION

### A. The ALJ's Evaluation of the Medical Evidence and the Opinion of Claimant's Treating Psychiatrist

Claimant contends that the ALJ failed to properly weigh a medical source statement completed on April 15, 2009 by Dr. Eaton, Claimant's treating psychiatrist. Pl.'s Mem. at 7-10. Claimant alleges that Dr. Eaton's opinion reflects that Claimant was unable to maintain work at any exertional level on a regular and continuous basis during the relevant time period. *Id.* at 8. Specifically, Claimant alleges that the ALJ's decision is unclear as to the weight Dr. Eaton's opinion received, the ALJ only considered the consistency factor in evaluating the opinion, the ALJ did not

10

consider the extent of outpatient therapy services Claimant received during the relevant time period, the ALJ's decision misstates Claimant's history of psychiatric hospitalizations, and the ALJ should have considered the report of Claudine Parker as supportive of Dr. Eaton's opinion. *Id.* at 7-10. Defendant responds that the ALJ properly evaluated Dr. Eaton's opinion and substantial evidence supports the ALJ's determination that the opinion was entitled to less weight. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") [DE-31] at 8-17.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into

11

account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) any other relevant factors.[3] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), she must nevertheless explain the weight accorded such opinions and must give "good reasons" for the weight assigned to a treating physician's opinion. *Ware*, 2012 WL 6645000, at *3 (remanding a case after determining that the ALJ failed to give good reasons for discounting a treating source's opinion where the ALJ's reasons offered–that Claimant is motivated for treatment and responds positively to medications–were not inconsistent with the treating source's opinion that claimant could not work) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); *see* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

Evidence from "other sources," such as counselors, may be used to show the severity of a claimant's impairments and how they affect his or her ability to function. S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Often, sources such as counselors "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." *Id.* at *3. Further, the

---

[3] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Case 5:13-cv-00853-FL   Document 37   Filed 01/23/15   Page 12 of 17

Social Security Administration's Regulations require ALJs to consider other factors of which they are aware when evaluating the opinion of an acceptable medical source, such as a treating physician. *Id.* at *4 (citing 20 C.F.R. §§ 404.1527, 614.927). Evidence from other sources that may "support or contradict a medical opinion," including from non-medical sources such as counselors "who have seen the individual in their professional capacity," can be an important other factor when evaluating a medical opinion. *Id.*

Claimant contends that the ALJ did not properly weigh the opinion of Dr. Eaton, her treating psychiatrist, as reflected in an April 15, 2009 treating source statement. Pl.'s Mem. at 7-11. In the April 2009 statement, Dr. Eaton indicated that Claimant's mental illness caused moderate restriction in her activities of daily living, marked difficulty in maintaining social functioning, and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner. *Id.*; (R. 1094). The ALJ stated that Dr. Eaton's April 2009 opinion "that the claimant had moderate to marked functional limitations is accorded less weight because it is not supported by his own treatment notes, which describe her during the period as pleasant and cooperative with a stable mood and no significant cognitive deficits." (R. 1126). The ALJ also discussed Claudine Parker's opinions in October 2008 and April 2009 that Claimant "had only 'a few days a month of mood instability' and was overwhelmed by daily living stresses," noting that these opinions were afforded lesser weight as Ms. Parker is not an acceptable medical source. *Id.*; (R. 851, 1093). At the hearing, Claimant testified about her treatment with Dr. Eaton and Claudine Parker, who were part of her psychiatric treatment team from Easter Seals. (R. 1150). Claimant testified that she saw Parker for in-home therapy sessions once or twice a week, and unsuccessfully tried a less frequent schedule; Claimant saw her caseworker's supervisor twice a month; and Claimant also frequently saw another

13

team member named Helen for in-home visits. (R. 1150-51). Additionally, Claimant saw Dr. Eaton once a month for her depression medication. (R. 1148).

The ALJ did not properly weigh the April 2009 opinion of Dr. Eaton, Claimant's treating psychiatrist, and failed to give "good reasons" for the weight assigned. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's reasoning for affording Dr. Eaton's opinion "less weight," that Dr. Eaton's opinion was not supported by his own treatment notes, is not supported by substantial evidence. (R. 1126). As an initial matter, Dr. Eaton's observations that Claimant was "pleasant and cooperative" during her appointments are not necessarily inconsistent with his April 2009 opinion that Claimant had "moderate to marked functional limitations" because of her mental illness. (R. 1094, 1126); *Ware*, 2012 WL 6645000, at *3 (noting that "[t]he reasons that the ALJ offered–that the claimant is motivated for treatment and responds positively to medication–are not inconsistent with [a treating physician's] opinion"). Further, to the extent that the ALJ discounted Dr. Eaton's opinion because his treatment notes described Claimant as having "a stable mood and no significant cognitive deficits" (R. 1126), the record does not support such a finding. *See Sutton v. Colvin*, No. 4:13-CV-131-BO, 2014 WL 4285061, at *2 (E.D.N.C. Aug. 29, 2014) (unpublished) (remanding a case where "the ALJ failed to fully consider the parts of the record which support [a treating physician's] opinion and as such the ALJ's decision to afford it limited weight is not supported by substantial evidence"). Here, the record contains five treatment notes from Dr. Eaton, all dated prior to the April 2009 opinion. None of these treatment notes describes Claimant as having a "stable mood and no significant cognitive deficits." *See* (R. 830-32, 995-97). These records describe Claimant having issues taking her medication as prescribed and experiencing "persistent depressive symptoms" (R. 997), Claimant responding well to changes in her medication

14

routine (R. 996), and Claimant then reporting depressive symptoms over the holidays due to disagreements with family (R. 995). Additionally, during this time period, Dr. Eaton prescribed Claimant a variety of psychiatric medications to address her mental issues, including Wellbutrin, Prozac, Trazodone, Klonopin, and Risperdal. *See, e.g.*, (R. 997).

In addition to Claudine Parker's October 2008 and April 2009 opinions, which were referenced by the ALJ, the record contains extensive documentation of Claudine Parker's frequent home visits with Claimant. The ALJ correctly notes that Parker is not an acceptable medical source, but Parker is a licensed professional counselor who treated Claimant in her professional capacity as part of a larger psychiatric care team, which included Dr. Eaton. Accordingly, the record evidence of Parker's treatment notes are an appropriate "other factor" that the ALJ should have considered in weighing Dr. Eaton's opinion. *See* S.S.R. 06-03p, 2006 WL 2329939, at *4.

Defendant contends that because Dr. Eaton's opinion is a check-box form with no explanation of the limitations assessed, it is entitled to less weight, citing *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9 (E.D.N.C. May 24, 2011) (unpublished). Def.'s Mem. at 10. In *Whitehead*, however, the court determined that the opinions contained in a check-box form were "conclusions [that] had no support in the medical record" and that the opinion was inconsistent with both the doctor's own treatment notes and the notes of a social worker who also treated the claimant. *Whitehead*, 2011 WL 2036694, at *10. The instant case is distinguishable, as Dr. Eaton's treatment notes are not necessarily inconsistent with his April 2009 opinion, and other evidence of record would support his determination that Claimant had moderate to marked functional limitations.

Accordingly, the ALJ's stated reason for discrediting Dr. Eaton's opinion that Claimant had moderate to marked functional limitations–that the opinion was not supported by his own treatment

15

notes–is not supported by substantial evidence. Dr. Eaton's treatment notes, while they described Claimant as being pleasant and cooperative at times during their appointments, also detail that Claimant required a significant amount of psychiatric medications and other medical evidence of record documents Claimant's extensive in-home therapy from other members of the treatment team. "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) (unpublished) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992) and citing 20 C.F.R. § 404.1527(d)). Here, while the ALJ attempted to show that Dr. Eaton's opinion is not supported by his treatment notes, this finding is not supported by substantial evidence, and the ALJ has failed to give good reason for the weight afforded Dr. Eaton's opinion. Additionally, the ALJ "failed to adequately consider the factors for determining the weight of medical opinions." *Guthrie v. Colvin*, No. 4:13-CV-57-FL, 2014 WL 2575318, at * (E.D.N.C. June 9, 2014) (adopting memorandum and recommendation determining that the ALJ's reasons for assigning certain weight to medical opinion evidence were not supported by substantial evidence in the record and noting that the ALJ failed to adequately consider the factors laid out in the regulations for weighing medical evidence). At most, here, the ALJ only considered the consistency and supportability of Dr. Eaton's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c) (listing six non-exclusive factors to consider in weighing a medical opinion when the ALJ determines it is not entitled to controlling weight). Given the extensive record evidence of Claimant's treatment from her entire Easter Seals psychiatric team during the relevant time period, that evidence, including the treatment notes of Claudine Parker, should have been considered as an

"other factor" in weighing Dr. Eaton's opinion. The ALJ failed to properly evaluate the medical evidence in this case, specifically the April 2009 opinion of Dr. Eaton, and therefore the case should be remanded for the ALJ to re-evaluate the medical opinion evidence.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-28] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-30] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 22nd day of January, 2015.

Robert B. Jones, Jr.
United States Magistrate Judge